HARRIETT K. LADD v. WILLIAM S. CRAIG ET AL.

[47 South. 777.]

1. JUDICIAL SALES. *Administrators. Decree for sale of land. Recitals. Service of process. Evidence. Absence of court files.*

In the absence of the court files, a decree authorizing an administrator to sell the lands of his intestate for the payment of debts, reciting that the defendants were duly served with process before its rendition, should not be overthrown by denials that they were so served where the testimony is not clear, overwhelming and convincing.

2. SAME. *Same. Collateral attack. Inadequacy of price.*

On a collateral attack an administrator's sale of lands will not be held void for inadequacy of price, where the sale was made in unsettled and troubled times and the land was subject to a life estate which postponed the purchaser's occupancy for many years.

3. SAME. *Same. Confirmation. Evidence. Payment of bid. Sufficient proof.*

A decree confirming an administrator's sale of land, adjudging that it was made in conformity with the decree of sale, together with

a recital in the deed to the purchaser that the purchase money had been paid and a charge therewith against the administrator in his accounts, sufficiently prove the payment, in a collateral attack on the sale predicated of its alleged nonpayment.

4. SAME.  *Same.  Place of sale.  Code 1871, § 1038.  County seat.  Confirmation.  Effect.*

By confirmation the court makes an administrator's sale its own; Code 1871, § 1038, providing that where no direction is given as to the place of sale, an administrator's sale, it shall be made at the county seat, does not apply to a decree empowering an administrator to make sale at a place to be determined by him, since the decree gave direction as to the place; and a sale made thereunder, confirmed by the court, is not subject to objection because not made at the county seat.

5. COUNTY SEAT.  *Evidence.  Judicial notice.*

Courts take judicial notice of the present location of the county seat of a county and where it has been located in the past.

FROM the chancery court of, first district, Yalobusha county. HON. ISAAC T. BLOUNT, Chancellor.

Craig and others, appellees, were complainants in the court below.  Mrs. Ladd, appellant, was defendant there.  From a decree in complainants' favor defendant appealed to the supreme court.

The facts are stated in the opinion of the court.

*William C. McLean,* for appellant.

It was not the duty of the administrators to preserve court papers; it was the duty of the clerk to do so, and the fact that the papers are missing is no evidence of negligence upon the part of the administrators, or the purchaser of the lands. Neither the purchaser of the lands, nor the administrators are to be prejudiced in the least by the fact that the papers are missing from the record, and our court has repeatedly held that the fact that papers are missing from the record is not to be considered, so as to at all prejudice the rights of the parties who claim by virtue of the proceedings.  Surely a purchaser of lands at an administrator's sale is under no duty or obligation whatever to see that the court papers are preserved.

The deed from the administrators to Black shows that the total amount bid for the land was the sum of $924; one third of this sum is $308, and the deed acknowledged the payment of this sum; and the deed also recites that the purchaser gave his two bonds, each for the sum of $308, and the final account of the administrators, which they presented and which was passed on and approved and accepted by the court as a true and correct final settlement, charged the administrator with, first, the $308, the cash payment; and secondly, with the $618, the deferred payments.

The record conclusively shows that Black became the purchaser of this land, and that he paid every cent of the purchase money to the administrators. There is nothing at all in the record even suggesting or intimating that there was any fraud or unfair dealings, either upon the part of the administrators or upon the part of Black, the purchaser of this land at the administrators' sale. There is no evidence in the record what was the value of the property sold. We must bear in mind the interest which the purchaser obtained was simply a reversionary interest, was purely speculative, and the facts in the case disclose that the widow lived over thirty-three years after this sale and during all of this time, the purchaser was kept out of the enjoyment of the interest he purchased. This case is a fit illustration of the uncertainty as to the value of a reversionary interest in real estate.

The decree ordering the sale of lands does not name where the lands shall be sold, except that it be sold in the county in which they are situated—the decree reciting: "Said administrators shall at the time and places appointed, being within the counties where the lands are situated, sell at public vendue to the highest bidder," etc. Under the law as it then existed, and as it had then existed in this state, at least since 1857, the chancery court was empowered to name a place other than the courthouse, where the land could be sold. Code 1871, § 1038.

The court had the right in the first instance to direct the sale of these lands at Oakland, and it necessarily follows that the

court had the right to approve the sale that was made at Oakland. This is not really open to debate, but all of the authorities are *uno flatu* concur in saying that confirming the sale, cured all defects in selling at the wrong place. *Henderson v. Herrod,* 23 Miss. 434; *Tate v. Bush,* 62 Miss. 145, 17 Am. & Eng. Ency. of Law (2d ed.), 993 and notes, and extended notes to 29 Am. St. Rep. 495.

While the court below did not decide the question, yet, it was sought in the court below to nullify the decree ordering the sale of the lands, by showing that the parties were not served with process. The rule is well settled in this state and elsewhere (see *Cox v. Simmons,* 57 Miss. 183; *Summers v. Sivley,* 57 Miss. 712; *Duncan v. Gerdine,* 59 Miss. 550) that the evidence must be clear, direct, positive, affirmative and absolutely convincing that the parties were not served with process. The courts will never disturb a judgment or a decree of a court of record upon the ground that the parties were not served with process, except where the evidence is clear and convincing—in fact, if there is any doubt at all, the doubt will be resolved in favor of sustaining the decree.

The final decree, rendered November, 1872, specifically recites that the parties, naming them, had been served with process.

The action is barred under the two years' statute. Code 1892, § 2751; Code 1880, § 2631; Code 1871, § 2160. This suit is a suit in the nature of a bill of review, and consequently must be brought within two years after the removal of the disabilities of minority.

*W. V. Sullivan,* for appellees.

The widow of deceased being in possession until July, 1906, the statute of limitations did not run until that time. There never has been and the record does not show service of process to declare the estate insolvent and sell it. Affirmative proof shows that those who were interested in the attempt to declare the es-

tate insolvent wished to steal this property.   It does not appear
that Black ever paid one cent for the land in question.   He
neither paid anything nor did anything that should tend to con-
firm the title.

Mrs. Black, now Mrs. Ladd, the party in interest, is living
and according to her showing never owned any interest in the
land.   No process was ever served upon any one of the children
in this case.

FLETCHER, J., delivered the opinion of the court.

Appellees, who are children of William B. Craig, deceased,
bring their suit for an injunction against appellant to restrain
her from prosecuting an action of ejectment against tenants of
appellees in possession of certain lands situated in Yalobusha
county.

Both parties to the controversy deraign title from William B.
Craig, who owned the land at the time of his death, in 1869.
In November, 1871, Moore and Green were appointed adminis-
trators of the estate, and some time thereafter exhibited their
bill in the chancery court, making all the heirs, some of whom
were minors, parties defendant, asking. that the estate be de-
clared insolvent and the lands sold to pay debts.   On Novem-
ber 7, 1872, a decree was entered sustaining the prayer of the
bill, declaring the estate insolvent, and directing the sale of the
lands.   This decree recited that "summons has been issued to
and duly and legally served on the heirs at law and distributees
of said estate;" and all these heirs are named in the decree.
Prior to the rendition of this decree, a guardian ad litem had
been appointed for the minor defendants, and an order made
directing the issuance of process.

The decree of November 7, 1872, provided: "It is further
ordered, adjudged, and decreed by the court that after first giv-
ing four weeks' notice of the time, places, and terms of sale by
advertisements put up in three places in the counties where the
lands of said estate are situated, and also by publishing such

notice of sale once a week for four consecutive weeks in some newspaper published in such counties (or if none be there published, then in a newspaper published in the most convenient county to that in which the lands to be sold are situated). Said administrators shall at the times and places appointed, being within the counties where the lands are situated, sell at public vendue to the highest bidder at public outcry the lands designated and described in their said petition, and in addition thereto any and all other lands, tenements, and hereditaments belonging to the estate of their said intestate, William B. Craig, deceased, together with the reversion in fee of said estate in the lands allotted and set apart to the said Mary Jane Craig as dower. And that they do require the purchasers of said lands at said sales to pay one third of the purchase money in cash, one third in one year, and one third in two years from the day and date of sale, taking from said purchasers for the two deferred and credit payments bonds and securities, and, in addition to the bonds so taken from each purchaser for said credit payments, holding the lands liable and subject to a lien therefor."

On February 8, 1875, a decree was entered by the chancery court confirming a sale of the lands by the administrators made pursuant to the decree of February 7, 1872, and in this decree it is recited that it appeared to the satisfaction of the court that "said sale was made, conducted, and concluded strictly in accordance with law, and that the directions prescribed in the decree of sale by this court have been followed," etc.

It should be stated that, contemporaneously with these proceedings, the surviving widow of William B. Craig had applied to the court to have her dower interest allotted, and such regular and usual proceedings were had that the lands now in controversy were so allotted to Mrs. Craig, and she resided on this land continuously until her death in July, 1906. It will·be remembered that the decree of November 7, 1872, provided for the sale of the reversionary interest in the land allotted as

·dower to the surviving widow, and that the administrator's sale was confirmed as aforesaid, in February, 1875. One A. J. Black purchased the reversionary interest, and to this interest Mrs. Ladd, the appellant here, succeeded. It will thus be seen that the attack is upon the sale made to Black by the administrators, Moore and Green. If this sale is void, the land belongs to the heirs of William B. Craig; if the sale is to be upheld, Mrs. Ladd is the lawful owner of the reversionary estate, the life estate having terminated at the death of the life tenant, Mrs. Craig.

The petition asking for the sale of the lands, the summons to the heirs to appear and contest the petition, and the report of the commissioners who made the sale, are all missing from the files, and their absence from the record is satisfactorily accounted for. There remain, however, the order directing process to issue, the decree ordering the sale and giving directions for its conduct, the decree confirming the sale, the final report of the administrators, showing payment of the purchase money, and the deed which the administrators made to Black.

It was sought to impeach the validity of these proceedings by presenting parol proof that the defendants had never been served with process to answer the original petition. Whether this proof was competent and sufficient to overthrow the recitals in the decree, to the effect that all the interested parties had been regularly summoned, the chancellor thought it unnecessary to decide. For our part, we cannot hold that this parol testimony is sufficiently clear and convincing to contradict the decree. No good purpose will be subserved by pointing out in detail wherein lies the inherent weakness of this proof. We content ourselves with saying that, under all the authorities, the proof necessary to overthrow a decree must be clear, overwhelming, and convincing, and this proof falls far short of this strict and established standard.

It was thought by the chancellor that the ·consideration paid by Black was so grossly inadequate as to throw suspicion upon

the sale.    But it must be remembered that this sale was made .in that unsettled and troubled period in our history when land values were greatly reduced, a result attendant upon the political condition of our state.    Then, too, the purchaser at this sale was buying subject to a life estate, which, in fact, postponed for nearly thirty-five years his occupancy of the premises.    Considering the character of the times and the nature of the estate purchased, we cannot attach significance to the alleged inadequacy of the purchase price.    Nor can we agree with the chancellor that there is no evidence in this record that the purchase price was paid.    The decree confirming the sale recites that all the conditions imposed by the decree ordering the sale had been complied with, among which was the payment of one-third of the purchase money in cash and the execution of bond for the balance.    Furthermore, if we look to the recitals of the deed made by the administrators to Black, we see that the purchase price of the lands bought by Black at the sale amounted to $924, and in the final account of the administrators they charge themselves with this identical sum as having been received from Black.    We find no difficulty, therefore, in reaching the conclusion that the sale was made in good faith, after due notice to the parties, and that the purchase money was actually paid.

One other question remains to be considered.    All the proceedings in this case were governed by the Revised Code of 1871, § 1038, which provided that sales of real estate, ordered by a decree of a court of chancery, shall be made "at such place and on such notice as may be directed in the decree, and if no direction shall be given, then at such place and on such notice as is required in case of sales under execution at law."    Sales of real estate under execution were required to be made at the county seat.    Now, while the decree confirming the sale is silent as to the place where the sale was made, there being only a general recital that all the provisions of law and all the directions of the former decree had been complied with,

yet the deed executed to Black recited that the sale was made at Oakland, which we judicially know is not now, and has never been, the county seat of Yalobusha county. It may well be doubted whether this recital in the deed is of sufficient evidential value to overthrow the presumption that attends the correctness of the court's decree, adjudging that the sale was made in conformity with law. As was said in *Tate v. Bush,* 62 Miss. 145, in a case where counsel for appellee conceded that the sale was made on the premises and not at the county seat: "If it be admitted that a legal sale could not have been made except at the door of the courthouse, it yet remains true (in the absence of any statement in the report that the sale was made at any other place) that the time, manner, and place of sale were necessarily involved in the hearing of the application to confirm, and the presumption must be indulged, even on direct appeal, that the decree was found upon sufficient evidence."

However this may be, and conceding that there is competent and sufficient proof of which to predicate the conclusion that the sale was made elsewhere than at tthe county seat, we do not think this fact, in the light of the language quoted from the decree in the early part of this opinion, renders the sale void. It should be noticed that the statutes gives to the court ample power to name, in the first instance, a place other than the county seat where the sale should be had. The sale was not, therefore, held at a place prohibited by law, but at a perfectly proper place, provided the court had so designated. It may be said that the decree in this case failed to designate a place, and that therefore no legal sale could have been made except at the county seat. The error in this argument is readily seen by an inspection of the language of the decree, which we shall attempt to demonstrate a little later. Here we desire to say, that, even if no directions had been given, there is respectable authority for upholding the decree. The Kentucky court of appeals puts it thus: "The judgment failing to designate the place where the sale should be made, the law required

the commissioner to make it at the door of the courthouse of the county in which the property was situated. But the sale having been made and reported, the court had jurisdiction to decide whether it had been made according to the law, and confirmation of the report was a decision that the sale had been so made; and, however, erroneous that decision may have been, the judgment of confirmation was not void." *Revill's Heirs v. Claxon's Heirs,* 12 Bush, 558. Mr. Freeman reaches the same conclusion from a viewpoint slightly different from that assumed by the Kentucky court, when he says: "The object of the proceeding for confirmation is to furnish an opportunity for inquiry respecting the acts which have been done under the license to sell. The court may, if it deems best, ratify various irregularities in the proceedings. If the officer changed the terms of the sale, the court may ratify his action provided the terms, as charged, are such as the court had power to impose in the first instance." Freeman on Void Judicial Sales, § 44.

But there is a consideration akin to the ones just treated, but not identical with them, arising from the precise language of the statute and the precise language of the decree ordering the sale. The statute, let it be observed, provides for a sale at the county seat only in the event that no directions as to the place of sale are given. The decree in this case, fairly considered, authorizes the administrators to name a place for the sale, and to give notice in the advertisement of the time and fact of sale at the place so selected by them. It cannot, therefore, be said that no directions whatever were given as to the place of sale. That function which might well have been performed by the court was committed to the administrators; in this case, officers and agencies of the court, moving only under the court's direction. Their act in selecting Oakland as the place of sale became the act of the court when their report came in for scrutiny and approval by the court. The report being in all things confirmed, any irregularity in the sale on account of the place where it was made was cured by the action of the court in adopt-

Syllabus.

ing the selection which the administrators had made, and which thereby became as effectual to pass title as if selected by the court in the first instance. As is well said by the supreme court of Virginia: "Confirmation is the judicial sanction of the court; and by confirmation the court makes it a sale of its own; and the purchaser is entitled to the full benefit of his contract, which is no longer executory but executed, and which will be enforced against him and for him." *Langyher v. Patterson et al.,* 77 Va. 470.

It follows from these views that the court below was in error in sustaining the bill of appellees and in dismissing the cross-bill of appellant, and the cause must be remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*